**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BECKY WESBERRY, *et al.*, | : | | |
| | : | Civil Action No.: | 15-0825 (RC) |
| Plaintiffs, | : | | |
| | : | Re Document No.: | 12 |
| v. | : | | |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE**

**I.  INTRODUCTION**

Plaintiffs Becky Wesberry and Jim Wesberry (collectively, the "Wesberrys" or "Plaintiffs")[1] bring this personal injury action against the United States.  The Wesberrys, a married couple from Texas, allege that Becky Wesberry fell and sustained serious injuries when leaving Ford's Theatre, the historic site of President Abraham Lincoln's assassination on April 14, 1865.  The United States National Park Service, an agency of the United States Department of the Interior, is responsible for administering the Theatre.  The Wesberrys assert a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, and also seek damages for Jim Wesberry's loss of consortium due to his wife's injuries.

Following the filing of an Amended Complaint, the United States moved to dismiss.  The government argues that the Wesberrys' claims are barred by sovereign immunity and that they

---

[1] To avoid confusion, the Court will use Plaintiffs' first and last names when referring to them individually.

fail to state a claim upon which relief can be granted.  In their opposition to the government's

motion, the Wesberrys request leave to conduct jurisdictional discovery.

For the reasons stated below, the Court finds that the discretionary function exception to

the FTCA may bar the Plaintiffs' claims.  Specifically, the Court finds that the National Park

Service's decisions with regard to warning signs, handrails, and other safety features are

grounded in public policy.  However, at this time, the Court finds that it would be premature to

determine whether any binding mandate governs the agency's decision-making process.  Instead,

the Court will allow Plaintiffs to conduct strictly limited jurisdictional discovery on that

question.  Discovery will be permitted only on whether a mandatory directive governed the

National Park Service's acts or omissions, and, if such a directive existed, whether government

employees followed its command.  Thus, the Court will deny the government's motion, without

prejudice, and permit the government to move for dismissal following jurisdictional discovery, if

it chooses to do so.

## II.  BACKGROUND

### A.  Becky Wesberry's Injury

According to the Amended Complaint, Plaintiffs Becky Wesberry and Jim Wesberry

visited Ford's Theatre in Washington, D.C., on April 28, 2014.  *See* Am. Compl. ¶ 9, ECF No. 9.

After spending time in the Ford's Theatre Museum, Plaintiffs exited the building through one of

five doors leading to the street.  *Id.* ¶¶ 11–13.[2]  The exit Plaintiffs used consisted of two low-rise

steps, which did not have a handrail, leading to a sloped brick sidewalk.  *Id.* ¶¶ 17–18.  Becky

---

[2] The Court notes an apparent disagreement between the parties as to whether Becky
Wesberry exited the first or second door from the left.  *See infra* note 6.  For the purposes of this
analysis, that difference is not relevant.

Wesberry was unaware of the steps when she exited the building and she fell to the ground.  *Id.*
¶¶ 19–20.  The fall caused "multiple facial lacerations," as well as a loss of consciousness.  *Id.* ¶
20.  National Park Service Rangers provided initial care until the District of Columbia Fire and
Emergency Medical Services arrived to transport Becky Wesberry to George Washington
University Hospital in an ambulance.  *Id.* ¶¶ 21–22.  Because of the fall, Becky Wesberry
suffered a broken hip, "which required extensive surgery and a prolonged hospital stay."  *Id.*
¶ 23.  Becky Wesberry also received ongoing physical therapy and psychiatric treatment after
returning home to Texas.  *Id.*

The Plaintiffs' Amended Complaint includes two Counts.  Count I alleges that the
negligence of the United States caused Becky Wesberry's injuries.  *Id.* ¶¶ 24–28.  Specifically,
Plaintiffs claim that the United States breached its duty of care through a number of alleged acts
or omissions, including:

> (a)  failure to provide hand rails . . . ;
>
> (b)  failure to assure steps were properly proportioned;
>
> (c)  failure to provide slip-resistant stairs . . . ;
>
> (d)  failure to mark, warn, or otherwise indicate an unsafe or dangerous
>      condition . . . ;
>
> (e)  failure to provide an adequate pedestrian pathway and/or stairway to
>      the street and/or other areas . . . ;
>
> (f)  failure to utilize signs, barriers, observable markers (e.g. stairway
>      lighting), and/or bright paints . . . ;
>
> (g)  failure to construct or maintain sidewalks and/or steps in conformity
>      with nationally recognized safety standards, including but not limited
>      to the National Fire Protection Association ("NFPA") standards . . . .

*Id.* ¶ 26.  Count II of the Amended Complaint seeks damages for Jim Wesberry's loss of
consortium due to Becky Wesberry's injuries.  *Id.* ¶¶ 29–31.

**B. Ford's Theatre**

Ford's Theatre is administered by the National Park Service as a historic site within the National Mall and Memorial Parks Area.[3]  *See* Def.'s Mot. Dismiss Ex. 1 Decl. of Karen Cucurullo ("Cucurullo Decl.") ¶ 3, ECF No. 12-1.[4]  In 1968, the National Park Service re-opened Ford's Theatre to the public after attempting to restore it to the state in which it operated on the night President Lincoln was assassinated.  *Id.* ¶ 4.  Today, Ford's Theatre includes a museum dedicated to the Theatre's history and legacy, as well as a working venue for theatrical performances.  *Id.*

The Organic Act requires the National Park Service to manage the National Park System in a manner that conforms to the purpose of the parks, which is to "conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life . . . as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a).[5]  Ms. Cucurullo declares that Ford's Theatre is managed in a manner consistent with those objectives.  *See* Cucurullo Decl. ¶ 5.  The

---

[3] When considering a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction, a court "accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).  If necessary to resolve a challenge to subject matter jurisdiction under Rule 12(b)(1), a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  For the purposes of deciding whether this Court has subject matter jurisdiction, the Court will consider evidence outside the pleadings, including the declaration provided by the government and documentary evidence provided by both parties.

[4] Karen Cucurullo, the government's declarant, is the Deputy Superintendent – Operations of the National Mall and Memorial Parks for the National Park Service.  *See* Cucurullo Decl. ¶ 1.  Ms.  Cucurullo has held that position since 2004.  *Id.*

[5] The Organic Act, originally codified at 16 U.S.C. § 1, was amended and recodified in 2014, although the core mandate remained the same.  *See* National Park Service and Related Programs, Pub. L. No. 113-287, § 7, 128 Stat. 3094, 3272 (2014).

National Park Service "vests decision-making authority," including "public safety-related decisions," in park superintendents. *Id.* ¶ 6. Specifically, National Park Service policies provide that the "means by which public safety concerns are to be met is left to the discretion of the superintendents and other decision-makers at the park level." *Id.* (quoting Cucurullo Decl. Ex. A at 5, ECF No. 12-2 (National Park Service Management Policies ch. 8.2.5)). Other National Park Service guidelines explain that park superintendents "must make discretionary decisions that balance public recreation and safety with preservation of the protected natural, historic, or cultural setting." *See* Cucurullo Decl. Ex. B at 2, ECF No. 12-3 (National Park Service Director's Order 50C); *see also* Cucurullo Decl. ¶ 6 (quoting a portion of Order 50C).

The Ford's Theatre facade includes five doors that exit from the lobby onto 10th Street, Northwest. *See* Am. Compl. ¶¶ 12–13; Cucurullo Decl. ¶ 7. Each exit steps down to the sidewalk at street level. *See* Am. Compl. ¶ 13; Cucurullo Decl. ¶ 7. Because the sidewalk below the exits is on a slope, the number of steps is not uniform from exit to exit. *See* Cucurullo Decl. ¶ 7; *see also* Am. Compl. ¶ 17 (noting slope). The first and second exits (counting from left to right) did not feature handrails, but the remaining three did include handrails. *See* Cucurullo Decl. ¶ 8.[6] In the 1860s, none of the exits at Ford's Theatre had handrails. *See id.* ¶ 9; *see also*

---

[6] The Amended Complaint alleges that, except for the exit used by Plaintiffs, each of the other four exits had a handrail. *See* Am. Compl. ¶¶ 14–15. The government relies on its declarant and a contemporaneous photograph of Ford's Theatre to show that the two leftmost exits did not have a handrail. *See* Def.'s Mem. P. & A. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 6 & n.2, ECF No. 12; Cucurullo Decl. ¶ 8; Government's Contemporaneous Photograph of Ford's Theatre, ECF No. 12-4. In response, Plaintiffs acknowledge the government's argument, but note that this "fact does not materially change the arguments in this case." Pls.' Mem. P. & A. Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n) at 1 n.1, ECF No. 14. The Court agrees that the difference is not material here. Although the Court finds that the left two exits did not have handrails, the more important point is that the parties agree that some exits had handrails, while others did not, and that Becky Wesberry fell while using an exit that did not have a handrail. *See* Am. Compl. ¶¶ 14, 18; Def.'s Mem. at 6; Cucurullo Decl. ¶ 8. Similarly,

Am. Compl. ¶ 16 (alleging handrails were installed after the Theatre was built).  In fact, in their

opposition to the motion to dismiss, Plaintiffs provide evidence, including photographs, that

some of the exits were originally large, arched windows.  *See* Pls.' Mem. P. & A. Opp'n Def.'s

Mot. Dismiss ("Pls.' Opp'n") at 5, ECF No. 14; Pls.' Opp'n Ex. 1 at 3, ECF No. 14-2 (including a

photograph of Ford's Theatre taken in the 1930s).  The government does not challenge the

veracity of those photographs, but does note that they were taken before the National Park

Service took control of Ford's Theatre.  *See* Def.'s Reply Mem. Supp. Def.'s Mot. Dismiss

(Def.'s Reply) at 12–13, ECF No. 17.  When the Theatre was re-opened under National Park

Service control in 1968, none of the five exits had handrails.  *See* Cucurullo Decl. ¶ 9; *accord*

Am. Compl. ¶ 16 (alleging handrails "were installed after the Theatre was built").  According to

the government's declarant, a review of National Park Service files did not reveal project

documents related to the installation of the handrails, but a review of photographs indicated that

the existing handrails were installed sometime between 1968 and 1996.  *See* Cucurullo Decl. ¶

10.

From inside the lobby, each of the five exits is marked with a lighted "Exit" sign.  *Id.* ¶

11.  According to Ms. Cucurullo, the use of signs and visual warnings at sites managed by the

National Park Service is guided by the "longstanding [National Park Service] policy to

minimally intrude upon the natural or historic setting in National Park System areas, and to avoid

an unnecessary proliferation of signs, while striving to ensure the safety of park visitors."  *Id.* ¶

12 (quoting National Park Service Sign Manual at 1-1).[7]  Ms. Cucurullo also declares that "[n]o

---

for the purposes of resolving the motion before the Court, it is not necessary to determine which
exit was the site of Becky Wesberry's fall.

[7] Although the government has attached relevant portions of the other National Park
Service guidelines to its motion, this document is not found in the record.

law, regulation, or policy mandates how the [National Park Service] has designed or maintained

the signage in Ford's Theatre," and that the National Park Service is free "to choose to minimize

the amount of signage and warnings within Ford's Theatre so as not to detract from the aesthetics

of the historic location." *Id.* ¶¶ 13–14.

### C.  Procedural Background

Becky Wesberry and Jim Wesberry brought suit in this Court in June 2015.  *See*

*generally* Compl., ECF No. 1.  The Plaintiffs filed an Amended Complaint on October 19, 2015.

*See generally* Am. Compl.  The Amended Complaint includes a negligence count against the

United States brought pursuant to the FTCA, 28 U.S.C. §§ 1346(b), 2671, and a claim for loss of

consortium.  *See id.* ¶¶ 1, 24–31.  The United States moves to dismiss.  *See* Def.'s Mot. Dismiss

("Def.'s Mot."), ECF No. 12.  Specifically, the government argues that Plaintiffs' claims are

barred by sovereign immunity, *see* Def.'s Mem. P. & A. Supp. Def.'s Mot. Dismiss ("Def.'s

Mem.") at 7–13, ECF No. 12, and that the Amended Complaint fails to state a claim upon which

relief can be granted, *see id.* at 13.  The Wesberrys oppose the motion, and also request

permission to conduct jurisdictional discovery.[8]  *See generally* Pls.' Opp'n.  The government's

motion is now fully briefed and ripe for decision.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack

of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited

jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Rasul v.*

*Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

---

[8] The United States also filed a reply brief in support of its motion.  *See generally* Def.'s
Reply.

375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is the plaintiff's burden to establish that the court has subject matter jurisdiction.  *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).  When considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  In this context, a court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.*  (quoting *Herbert*, 974 F.2d at 197).

## IV.  ANALYSIS

The United States moves to dismiss the Complaint on two grounds.  First, the government argues that the Court should dismiss the Complaint for lack of subject matter jurisdiction because Plaintiffs' claims fall within the discretionary function exception to the FTCA and are therefore barred by sovereign immunity.  *See* Def.'s Mem. at 7–13.  Second, the government argues that the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted because the Amended Complaint does not include "particularized allegations" showing how the allegedly negligent conditions proximately caused Becky Wesberry's fall.  *Id.* at 13.  The government also objects to Plaintiffs' purported reliance on "nationally recognized safety standards" to prove the government's negligence.  *Id.*  The Court must begin its analysis by determining whether it has jurisdiction.  Because the Court will permit limited jurisdictional discovery to determine whether a mandatory directive governed the National Park Service's decisions, the Court finds that it would be premature to decide whether the discretionary function exception applies to this case.  Therefore, the Court will deny the

government's motion to dismiss, without prejudice.  Because the Court cannot resolve the

discretionary function analysis at this time, it cannot move past the sovereign immunity analysis

to the merits of the case.

### A.  The Discretionary Function Exception

The United States argues that this Court lacks subject matter jurisdiction over Plaintiffs'

Complaint because the claims fall under the discretionary function exception to the FTCA's

waiver of sovereign immunity.  The Court finds that the National Park Service's decisions were

grounded in public policy considerations, including concerns about aesthetics and historical

preservation.  At this time, the Court also finds that Plaintiffs have failed to prove that a

mandatory rule or policy constrained the agency's decision-making.  However, because the

Court will permit limited jurisdictional discovery on that point, the Court determines that it

would be premature to find that the discretionary function exception bars Plaintiffs' claims.  The

government may raise the exception again, following the conclusion of jurisdictional discovery.

Sovereign immunity shields the federal government and its agencies from suit and is

"jurisdictional in nature." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79

(D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (other citations omitted).  The

government may waive immunity, but such a waiver "must be unequivocally expressed in

statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations

omitted).  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule

12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp.

2d 192, 200 (D.D.C. 2013).  The plaintiff bears the burden "of establishing both the court's

statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road &

Transp.*, 865 F. Supp. 2d at 80.  "[O]nce a court determines that it lacks subject matter

jurisdiction, it can proceed no further." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997).

The FTCA contains a limited waiver of sovereign immunity that allows the United States to be sued for the negligent acts or omissions of its employees who are acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976). Specifically, the FTCA waives sovereign immunity based on an "injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . if a private person would be liable to the claimant." 28 U.S.C. § 1346(b)(1).

A number of exceptions limit the scope of the FTCA, however. The discretionary function exception is one such exclusion from the FTCA's general jurisdictional grant and waiver of sovereign immunity. *See Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2011). Under this exception, the United States expressly retains its immunity for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception reflects Congress's "desire to prevent judicial second-guessing" of certain decisions. *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1954) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted). Because the purpose of the exception is to shield discretionary policy decisions from liability, the exception applies even when an employee's alleged acts are negligent. *See United States v. Gaubert*, 499 U.S. 315, 323 (1991) (examining *Varig Airlines* and explaining that actions taken in furtherance of the relevant discretionary decision in that case were protected, "even if those particular actions

were negligent").  "If the discretionary function exception applies, the district court lacks subject matter jurisdiction over the case."  *Sloan*, 236 F.3d at 759 (citing *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)).

In *United States v. Gaubert*, the Supreme Court created a two-step test to determine if the discretionary function exception applies to a government action.  499 U.S. 315 (1991).  First, the exception "covers only acts that are discretionary in nature" and "'involv[e] an element of judgment or choice.'"  *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536).  The exception will not apply where a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow."  *Id.*  In the case of a specific prescription, "no discretion is employed and the only remaining inquiry . . . is whether the employee did, or did not, do what was prescribed by the applicable statute, regulation, or policy."  *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 82 (D.D.C. 2005) (quoting *Macharia v. United States*, 238 F. Supp. 2d 13, 22 (D.D.C. 2002)).

Second, even if "the challenged conduct involves an element of judgment," that judgment must be "of the kind that the discretionary function exception was designed to shield."  *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz,* 486 U.S. at 536).  The exception is intended to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy," so it only protects "governmental actions and decisions based on considerations of public policy."  *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537).  When evaluating the governmental action or decision, a court's analysis should not turn on "what the decisionmaker was thinking, but [rather] the type of decision being challenged."  *Loughlin v. United States*, 393 F.3d 155, 163 (D.C. Cir. 2004) (alteration in original) (quoting *Cope*, 45 F.3d at 449).

1.  Is the Decision Grounded in Policy?

The Court will begin its analysis with the second prong of the *Gaubert* test, which asks whether the decision is the kind intended to be protected by the discretionary function exception. The crucial question is "whether the type of decision being challenged is grounded in social, economic, or political policy." *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003) (quoting *Cope*, 45 F.3d at 449).  This analysis is "admittedly difficult," in some cases, because "nearly every government action is, at least to some extent," linked to questions of public policy. *Cope*, 45 F.3d at 448 (citing *Gaubert*, 499 U.S. at 336 (Scalia, J., concurring)).  Still, the Supreme Court and the D.C. Circuit have provided a number of guiding principles.  For example, "garden-variety" decisions, such as the everyday, split-second choices a government employee makes while operating a vehicle, are not protected by the exception.  *See Gaubert*, 499 U.S. at 332.  Choice alone is not enough.  Instead, the exception only protects decisions that are "fraught with . . . public policy considerations," *Sami v. United States*, 617 F.2d 755, 767 (D.C. Cir. 1979), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), or "grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325.  Furthermore, essentially all government decisions implicate fiscal concerns to varying degrees.  *See Cope*, 45 F.3d at 449 (citing *ARA Leisure Servs. v. United States*, 831 F.2d 193, 196 (9th Cir. 1987).  But the "mere presence of choice—even if that choice involves whether money should be spent— does not trigger the exception."  *Id.*  Shielding garden-variety decisions and every choice with budgetary implications, however slight, would threaten to "swallow the FTCA's sweeping waiver of sovereign immunity."  *Id.*

The crucial question in this case is whether the National Park Service's decision to use certain safety measures and warnings, but not others, is the type of decision that "implicate[s]

social, economic, or political policies." *Gaubert*, 499 U.S. at 332.  To answer this question, the

parties each discuss *Cope v. Scott*, the leading case in this jurisdiction.  45 F.3d 445 (D.C. Cir.

1995).  In *Cope*, the D.C. Circuit considered allegations that the National Park Service was

negligent in its decisions related to Beach Drive in Rock Creek Park.  *Id.*  Cope, the plaintiff, was

injured in a car accident and claimed that the government failed to maintain the road properly

and to place adequate warning signs.  *Id.* at 450.  The court found that claims related to the

management, maintenance, and design of the road, including suggestions that the National Park

Service should have reduced the traffic load on Beach Drive, used a different material when

constructing the road, repaved the curve entirely, or milled the surface of the curve to create

grooves, were barred by the discretionary function exception.[9]  *Id.* at 451.  The court reasoned

that decisions of that type required "balancing factors such as Beach Drive's overall purpose, the

allocation of funds among significant project demands, the safety of drivers and other park

visitors, and the inconvenience of repairs."  *Id.*  The court reached a different conclusion,

however, on the question of warning signs.  *Id.*  The court rejected the government's argument

that its decisions implicated engineering, aesthetic, and fiscal concerns, and were thus fraught

with public policy considerations.  *Id.* at 451–52.  The court concluded that the National Park

Service had "chosen to manage the road in a manner more amenable to commuting through

nature than communing with it."  *Id.* at 452  The road, which carried more than 20,000 vehicles a

day, already included twenty-three signs of various types in a half-mile stretch including the

curve where the collision occurred.  *Id.*  For these reasons, the court found that the discretionary

---

[9] The court noted that "no regular maintenance would have prevented the road from deteriorating" in the manner alleged by the plaintiff.  *See Cope*, 45 F.3d at 451.  In other words, the decisions related to road management, maintenance, and design in *Cope* were "different from a case involving mundane decisions to fill or not fill potholes, or even the cumulative effect of such decisions."  *Id.*

function exception did not apply to the government's decisions against posting warning signs. *Id.*

Crucially, however, the court did not hold that aesthetic considerations can never implicate public policy in a way that triggers the discretionary function exception. *Cope* acknowledged that "in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess signs." *Id.* The decision turned on the fact that Beach Drive was simply "a commuter route through an urban park," not "the Grand Canyon's Rim Drive, nor Shenandoah's Skyline Drive." *Id.* The court distinguished *Cope* from other cases shielding the failure to post warning signs, because those "decisions were based on a reasonable desire to protect the experience of the park visitor." *Id.* (first citing *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir. 1987) (failure to place guardrail along the Blue Ridge Parkway may have implicated policy considerations such as protecting scenic vista); and then citing *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991) (decision not to place warning signs was part of policy decision to protect the wilderness experience in the park)). If Beach Drive were more like Rim Drive—and less like Interstate 95—aesthetic considerations may have been enough to trigger the discretionary function exception. In a similar vein, other circuits have repeatedly held that decisions based on aesthetic considerations may be protected by the discretionary function exception. *See, e.g.*, *Shansky v. United States*, 164 F.3d 688, 693 (1st Cir. 1999); *Chantal v. United States*, 104 F.3d 207, 212–13 (8th Cir. 1997); *Kiehn v. United States*, 984 F.2d 1100, 1104–05 (10th Cir. 1993).

Following *Cope*, district courts in this Circuit have found that legitimate aesthetic consideration are sufficient to shield decisions under the discretionary function exception. For

instance, in *Merry v. National Park Service*, the court considered a negligence claim brought by a patron of Ford's Theatre who fell down a flight of steps inside the building. 985 F. Supp. 2d 90 (D.D.C. 2013). The court, relying on a declaration filed by Ms. Cucurullo, found that National Park Service policy "require[d] that a natural or historical site be maintained with minimal intrusion." *Id.* at 95. Thus, the court held that the National Park Service's decision to use historic lighting and to minimize signage was shielded by the discretionary function exception. *Id.*[10] In *Hayes v. United States*, on the other hand, a court in this district found that the discretionary function exception did not bar a negligence claim based on the National Park Service's failure to post warning signs on the Rock Creek Park Trail. 539 F. Supp. 2d 393 (2008). That claim was brought by a cyclist who was injured on the trail, which ran alongside Beach Drive. *Id.* at 403. The *Hayes* court did not state that aesthetics could never play a role in the discretionary function analysis, but found that the "government ha[d] failed to demonstrate how aesthetic considerations [were] implicated along the portion of the [trail] involved in this case." *Id.* The court's reasoning was based on the fact that the relevant portion of the trail, like Beach Drive, was "not managed to facilitate the nature experience of park visitors." *Id.* Instead, the pathway was only twenty feet from the heavily trafficked Beach Drive—without any physical barrier separating the two—and that proximity caused frequent conflicts between vehicles, cyclists, and pedestrians. *Id.* In other words, the pathway was no hiking trail in Rocky

---

[10] Plaintiffs attempt to distinguish this case from *Merry* by arguing that by making certain changes (such as converting windows to exits and installing handrails at some exits, but not others), the National Park Service was required to "exercise[] its discretion reasonably." Pls.' Opp'n at 13–14. For the reasons explained at greater length below, the discretionary function exception bars the Court from considering the reasonableness of the agency's decision. *See Gaubert*, 499 U.S. at 323.

Mountain National Park, and was essentially indistinguishable from Beach Drive and the factors that compelled the result in *Cope*.

This case is closer to *Merry* than *Hayes*. The National Park Service's management of Ford's Theatre, including its decisions about safety features and warnings, implicates legitimate aesthetic and cultural preservation concerns. Ford's Theatre is an important historical site, which is now managed to explore the legacy of President Lincoln and his assassination. *See* Cucurullo Decl. ¶ 4; *see also Merry*, 985 F. Supp. 2d at 95. The Organic Act instructs the National Park Service to manage the National Park System in a manner that will "conserve the scenery, natural and historic objects, and wild life . . . and to provide for the enjoyment of the scenery, natural and historic objects, and wild life . . . as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a). Other National Park Service guidelines state that park superintendents must "balance public recreation and safety with preservation of the protected natural, historic, or cultural setting." *See* Cucurullo Decl. Ex. B at 2 (National Park Service Director's Order 50C); *see also* Cucurullo Decl. ¶ 6 (quoting a portion of Order 50C). Ms. Cucurullo declares that Ford's Theatre is managed in a manner consistent with those objectives. *See* Cucurullo Decl. ¶ 5.

The goal of preserving Ford's Theatre and leaving it unimpaired for future generations requires the National Park Service to balance aesthetic goals with public safety and other concerns. Ford's Theatre, the site of one of the critical moments in the history of the republic, is not like the commuter road at issue in *Cope.* The appearance of the Theatre, both inside and out, implicates important preservation concerns. The result might be different if the government had re-opened Ford's Theatre only as a venue for plays, with no connection to President Lincoln, or had hired a contemporary architect to completely renovate the structure in a modern style.

Instead, however, the historical significance of Ford's Theatre matches the visual majesty of the Grand Canyon.  *See Cope*, 45 F.3d at 451.  Decisions of the National Park Service that implicate aesthetic or preservation concerns at Ford's Theatre should be given the same deference.

This conclusion applies equally to Plaintiffs' claims that the National Park Service should have posted additional warnings and should have installed other safety features.  Delving into the wisdom of any particular safety feature requires the careful consideration of specific safety measures and concomitant changes to the Theatre's aesthetic appearance and historical accuracy. *See Shansky*, 164 F.3d at 693.  These are difficult decisions, which require knowledge of history, building design, and modern safety features.  The discretionary function exception to the FTCA reflects the fact that the agency, not the Court, is best equipped to answer those complex questions.  *See United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

The outcome does not rely on the National Park Service maintaining Ford's Theatre in the exact condition it was in on the night of President Lincoln's assassination.  Plaintiffs argue that the "government changed the historic nature of Ford's Theatre by converting windows into exits, installing railings, and installing some signs at the exit doors."  Pls.' Opp'n at 14. Plaintiffs' argument is misplaced.  The discretionary function exception protects decisions that are grounded in public policy.  Here, the decisions in question relate to balancing aesthetic and preservation concerns with public safety.  The exception is not limited to historic, cultural, or natural sites maintained in their pristine state.  For instance, the government points to *Brotman v. United States*, where the court found that the discretionary function exception applied to preservation concerns implicated by a 1980s improvement to stairs inside the pedestal of the Statute of Liberty.  111 F. Supp. 2d 418 (S.D.N.Y. 2000).  The court concluded that decisions involved in designing lighting and posting warning signs "involved the weighing of safety

concerns as compared with aesthetic ones and the impact of any changes on the historical accuracy of the rehabilitation." *Id.* at 426.  That type of decision "is not only grounded in policy concerns but, indeed, 'typifies the kind of governmental decisions which Congress intended to shield from judicial second-guessing.'" *Id.* (quoting *Chantal*, 104 F.3d at 212).  Similarly, in *Shansky*, the First Circuit found that changes made to a historical site in the 1960s were protected by the discretionary function exception, even though they altered the site's original character in some ways.  *See* 164 F.3d at 690, 693–94.[11]

Plaintiffs, analogizing to the road signs in *Cope*, also argue that the government cannot claim that "its lack of warning signs involves discretionary decisions since [it] already has some signs located at the exits."  Pls.' Opp'n at 11–12.  Again, in this case, making a choice to install some exit signs, but not other warnings, is the type of decision protected by the discretionary function exception.  *Cope* turned on the fact that Beach Drive was a commuter road, not a parkway managed to connect drivers to the natural world.  *See* Cope, 45 F.3d at 452.  The presence of many other signs was evidence of that reality, but *Cope* does not stand for the proposition that the presence of some signage means the agency cannot exercise discretion when avoiding the overuse of other signs.  Courts have held that where the discretionary function exception applies, it "protects both the decision whether to warn *and* decisions regarding the scope and content of such warnings."  *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 337 (3d Cir. 2012).  On a related note, a "commitment to safety in one area does not oblige an agency to strike the balance in favor of safety in every other area."  *Shansky*, 164 F.3d at 695.  The fact that the National Park Service took some safety precautions, such as using lighted exit

---

[11] This same logic applies to the 1968 renovation, as well as any subsequent improvement projects, including the addition of handrails sometime before 1996.  *See* Cucurullo Decl. ¶ 10.

signs and handrails on some exits, does not force the agency to implement every possible step to improve the safety of its patrons.

Plaintiffs also rely on *Boyd v. United States*, which is cited by *Cope*, to argue that the failure to warn Becky Wesberry is not protected by the discretionary function exception. 881 F.2d 895 (10th Cir. 1989). Plaintiffs' reliance on *Boyd* is inapposite. In *Boyd*, the Tenth Circuit held that, once the government decided to allow swimmers in a lake, the "alleged failure to warn swimmers of dangerous conditions . . . does not implicate any social, economic, or policy judgments." *Id.* at 898. The government argued that its decision to allow swimming was discretionary, and it therefore had no obligation to post warnings. *Id.* at 897–98. The court rejected that position because the failure to warn was a separate decision, which was unrelated to any policy considerations. *Id. Boyd* did not, however, stand for the proposition that a failure to warn can never be protected by the discretionary function exception, nor did the case implicate questions of aesthetic or historical values. Notably, in a subsequent case, *Kiehn v. United States*, the Tenth Circuit held that the National Park Service considered questions of public policy when deciding whether or not to post warning signs about the dangers posted at Dinosaur National Monument. 984 F.2d 1100 (10th Cir. 1993). This case, which implicates questions of aesthetic values and preservation at a unique historical site, is far closer to *Kiehn* than *Boyd*.

Finally, Plaintiffs argue that "the question is not whether the Park Service should have acted but whether it acted reasonably." Pls.' Opp'n at 13. Relying on brief, single quotations found in *Boyd* and *Hayes*, Plaintiffs suggest that the discretionary function exception does not apply because the National Park Service acted unreasonably. *See id.* at 12–14. This standard would completely eviscerate the discretionary function exception and must be rejected. By definition, FTCA claims must allege "the negligent or wrongful act or omission" of a

government employee.  28 U.S.C. § 1346(b).  The discretionary function exception bars some of

those negligence claims in order to protect policy decisions from "judicial second-guessing."

*Berkovitz*, 486 U.S. at 536–37 (quoting *Varig Airlines*, 467 U.S. at 814).  A rule that only

allowed the exception to protect *reasonable* decisions would completely short circuit the

statutory waiver of sovereign immunity and its exceptions.  Because of the purpose of the

discretionary function exception, it applies even when an employee's alleged acts are

negligent.  *See Gaubert*, 499 U.S. at 323; *see also Varig Airlines*, 467 U.S. at 820.

      For these reasons, the Court finds that the National Park Service's decisions with regard

to signage and other safety features at Ford's Theatre require the agency to balance aesthetic and

preservation concerns against the risks posed to patrons.  Those decisions implicate policy

considerations and constitute the type of discretionary decision-making that the discretionary

function exception is intended to protect.  Thus, the Court finds that the second *Gaubert* prong is

satisfied in this case.

## 2.  Does a Mandatory Policy Apply?

      Resolving the second *Gaubert* prong in the government's favor does not fully resolve the

issue, however.  Under the first prong, the United States could still be liable if "the injury

resulted from a government employee's failure to follow a specific, mandatory policy requiring a

particular course of action."  *Singh v. S. Asian Soc'y of The George Washington Univ.*, No. 06-

0574, 2007 WL 1521050, at *6 (D.D.C. May 21, 2007); *see also Gaubert*, 499 U.S. at 322.  If

the allegedly negligent act was controlled by any statute, regulation or established policy, it

cannot be discretionary because "the employee ha[d] no rightful option but to adhere to the

directive."  *Berkovitz*, 486 U.S. at 536.

Plaintiffs' argument that a binding directive governed the agency's decision-making is admittedly thin.  At best, the Amended Complaint alleges that "the presence of handrails on all but [one] exit indicates that the stairs were designed with handrails."  Am. Compl. ¶ 15.  In their opposition to the government's motion, Plaintiffs briefly elaborate that, "[g]iven the presence of railings on some of the exits, but not others, the reasonable inference is that the Park Service had a policy in place to install railings at exits with steps."  Pls.' Opp'n at 7.  Plaintiffs do not, however, point to any specific statute, regulation, or policy that might limit the agency's discretion.

 In contrast, the United States argues that "the [National Park Service] is under no mandate to install handrails, redesign stairs, install slip-resistant features, or otherwise conform to any mandatory safety standard."  Def.'s Mem. at 10.  Similarly, the government argues that questions about lighting, warnings, and safety features "are not controlled by any mandatory policy, regulation, or rule."  *Id.*  In support of its position, the government relies on its declarant, who states that no "law, regulation, or policy mandates how the [National Park Service] has designed or maintained the signage in Ford's Theatre."  Cucurullo Decl. ¶ 13.  Ms. Cucurullo also declares that the National Park Service "vests decision-making authority," including "public safety-related decisions," in park superintendents, and that agency polices provide that "the means by which public safety concerns are to be met is left to the discretion of the superintendents and other decision makers at the park level."  *Id.* ¶ 6.

Under the first prong of *Gaubert*, the discretionary function exception does not apply if a "federal statute, regulation or policy *specifically* prescribes a course of action for an employee to follow."  *Gaubert*, 499 U.S. at 322 (emphasis added) (quoting *Berkovitz*, 486 U.S. at 536).  The D.C. Circuit has repeated that the ultimate question is whether "a *specific* directive exists."

*Cope*, 45 F.3d at 448 (emphasis added).  Here, Plaintiffs' argument that the existence of

handrails on some exits, but not others, gives rise to a "reasonable inference" that the National

Park Service had a policy requiring handrails, is nowhere near proof of a specific directive.

Allowing Plaintiffs to rely on a mere "inference," *see* Pls.' Opp'n at 7, instead of a "federal

statute, regulation or policy [that] *specifically* prescribes a course of action," *Gaubert*, 499 U.S.

at 322 (emphasis added) (quoting *Berkovitz*, 486 U.S. at 536), would seriously undermine prong

one of the *Gaubert* test.

Although Plaintiffs have not identified any binding regulation or policy at this time, they

do seek jurisdictional discovery to determine "whether there was a Park Service policy requiring

railings to be installed on stairs."  Pls.' Opp'n at 4.  For the reasons explained below, and in light

of this Circuit's liberal approach to jurisdictional discovery in the FTCA context, the Court finds

that it would be premature to resolve the first *Gaubert* prong without giving Plaintiffs an

opportunity to conduct limited, jurisdictional discovery.[12]

## B.  Request for Jurisdictional Discovery

The Wesberrys argue that they should "have the opportunity to conduct discovery to

rebut the government's arguments."  Pls.' Opp'n at 4.  Specifically, Plaintiffs argue that they

should be permitted to conduct discovery on:

(1) the reasons railings were installed on some exits and not others, (2) the
reasons warning signs were not installed on exits leading to steps without railings,

---

[12] The Court cannot reach the merits of the case without assuring itself that it has subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) (rejecting the principle of hypothetical jurisdiction).  The Court, therefore, does not reach Defendant's arguments under Rule 12(b)(6) at this time.  *Cf. Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) ("[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further.").  Nor does the Court address the significance of national safety standards.

and (3) whether there was a Park Service Policy requiring railings to be installed on stairs.

*Id.* at 4.  Plaintiffs also draw attention to the changes made to the building since President Lincoln's assassination, including the fact that some of the existing exits were originally windows and that railings were added to some doors, but not others, after the Park Service's substantial restoration in the 1960s.  *Id.* at 5–6; *see also* Pls.' Opp'n Ex. 1 at 3 (including a photograph of Ford's Theatre taken in the 1930s).  In response, the United States argues that "jurisdictional discovery would not be meaningful to the Court's jurisdictional inquiry."  Def.'s Reply at 1–2.  In light of this Circuit's liberal approach to jurisdictional discovery in the context of exceptions to the FTCA, the Court will permit closely cabined jurisdictional discovery for the reasons explained below.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal."  *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003).  The D.C. Circuit has stated that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  "The district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," but, "[i]n order to avoid burdening a sovereign that proves to be immune from suit . . . jurisdictional discovery should be carefully controlled and limited."  *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citations omitted) (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks omitted).

In the FTCA context, courts in this Circuit frequently grant jurisdictional discovery where plaintiffs have challenged the application of exceptions to the FTCA.  *See, e.g., Ignatiev*, 238 F.3d at 467 (reversing the district court's decision to prohibit discovery regarding whether

non-public, mandatory guidelines existed); *Loughlin*, 393 F.3d at 166–68 (finding that the district court erred in suggesting that jurisdictional discovery is limited to the first prong of the discretionary function exception test); *Davis v. United States*, No. 16-0135, 2016 WL 3951057, at *10 (D.D.C. July 20, 2016) (permitting limited jurisdictional discovery); *Sledge v. United States*, 723 F. Supp. 2d 87, 94–95 (D.D.C. 2010) (same); *Singh*, 2007 WL 1521050, at *6 (same). In the FTCA context, in fact, the D.C. Circuit has "recognized that where 'facts [are] necessary to establish jurisdiction,' plaintiffs *must* be afforded the opportunity for discovery of [such] facts . . . prior to' the granting of a motion to dismiss for lack of subject matter jurisdiction." *Loughlin*, 393 F.3d at 167 (alterations in original) (emphasis added) (citing *Ignatiev*, 238 F.3d at 467).

The Court finds that limited discovery is warranted in this case. In order to determine whether the discretionary function exception applies to Plaintiffs' FTCA claim, the Court must consider factual matters outside the Amended Complaint. Plaintiffs have done little to suggest that a mandatory directive governed the National Park Service's decisions, but they have sought leave to conduct discovery on "whether there was a Park Service policy requiring railings to be installed on stairs." Pls.' Opp'n at 4. The Court will follow the Circuit's instruction that "plaintiffs must be afforded the opportunity for discovery" when facts are necessary to establish jurisdiction in this context. *Loughlin*, 393 F.3d at 167.

As explained above, Plaintiffs' argue that "the presence of railings on some of the exits, but not others" gives rise to "the reasonable inference is that the Park Service had a policy in place to install railings."[13] Pls.' Opp'n at 7. Standing alone, that inference is not sufficient to

---

[13] This fact may suggest the opposite—i.e., that the National Park Service exercised its discretion in a fashion that balanced historical accuracy with patron safety—concluding that, although no railings would be the most desirable and historically accurate objective to be

prove that a mandatory directive governed the agency's decisions.  However, jurisdictional

discovery may shed additional light on Plaintiffs' argument, or reveal binding, internal policies,

if they exist.  Additionally, although Plaintiffs do not make the argument explicitly, their

allegation that the National Park Service failed to conform to nationally recognized safety

standards might also be read as a suggestion that those standards were mandatory directives to

the agency.  *See* Am. Compl. ¶ 26(g).  Based on the current record, the Court does not decide,

whether those standards constitute a mandatory directive that could implicate the first prong of

*Gaubert*.  Discovery may clarify the significance of those standards and whether National Park

Service employees adhered to them, if they were required to do so.  These examples are merely

illustrative, and Plaintiffs are not limited to seeking discovery on these two issues.

 Of course, any discovery conducted by the Wesberrys at this time must be strictly limited

to jurisdictional issues.[14]  The Court recognizes that "jurisdictional discovery should be carefully

---

achieved, at exits that lead out to the greatest number of steps, and only at those exits, patron
safety would be prioritized by adding railings.

 [14] The D.C. Circuit has clarified that discovery may be permitted to allow a plaintiff to
supplement its allegations related to the second prong of the *Gaubert* test.  *See Loughlin*, 393
F.3d at 167 ("No bright line rule confines discovery to prong one of the discretionary function
exception.").  The *Loughlin* court also noted, however, that "[b]ecause the prong-two inquiry
looks to the *type* of decision . . . , irrespective of considerations that factored into the *actual*
decision, it may often be the case that discovery is unnecessary to determine whether prong two
of the discretionary function exception extends to any particular act or omission."  *Id.* at 166
(citations omitted) (citing *Cope*, 45 F.3d at 449).  This is not a case where "the factual predicate
is critical to an accurate analysis of the nature of the decision made."  *Id.* 166–67.  As other
courts have found, decisions implicating aesthetic concerns at scenic or culturally significant
sites require the consideration of public policy.  *See, e.g.*, *Shansky v. United States*, 164 F.3d
688, 693 (1st Cir. 1999); *Chantal v. United States*, 104 F.3d 207, 212–13 (8th Cir. 1997); *Kiehn
v. United States*, 984 F.2d 1100, 1104–05 (10th Cir. 1993); *Merry v. National Park Service*, 985
F. Supp. 2d 90 (D.D.C. 2013).  Because the Court's analysis focuses on the *type* of decision,
rather than the *actual* decision-making process, discovery is not necessary to resolve the second
prong in this case.  *See Loughlin*, 393 F.3d at 166.  Thus, Plaintiffs' request to take discovery
concerning the decision-making at issue in this case is denied to the extent it does not implicate
mandatory directives to the agency.

controlled and limited" to avoid burdening a sovereign who may be immune from suit. *Phoenix Consulting*, 216 F.3d at 40. The Wesberrys will not be permitted to seek discovery on the merits of their case. To the extent Plaintiffs seek leave to conduct discovery on non-jurisdictional issues, that request is denied.

For example, several issues listed in Plaintiffs request for discovery are irrelevant to the threshold jurisdictional question at issue here. First, Plaintiffs argue that they should be allowed to conduct discovery on "the reasons railings were installed on some exits and not others." Pls.' Opp'n at 4. Second, Plaintiffs seek to conduct discovery on "the reasons warning signs were not installed on exits leading to steps without railings." *Id.* Both topics are irrelevant to whether the discretionary function exception applies to this case. As previously explained, the application of the discretionary function exception does not turn on "what the decisionmaker was thinking, but whether the type of decision being challenged is grounded in social, economic, or political policy." *Cope*, 45 F.3d at 449 (citing *Gaubert*, 499 U.S. at 325). In other words, the government is not required to show that the relevant decisionmakers *actually* considered the relevant policy ramifications. *See Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003); *see also Shansky v. United States*, 164 F.3d 688, 692 (1st Cir. 1999) ("It is therefore of no practical consequence that Park Service officials failed to mull particular safety issues. . . ."); *Gotha v. United States*, 115 F.3d 176, 180 (3d Cir. 1997) ("The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion." (quoting *Smith v. Johns-Manville Corp.*, 795 F.2d 301, 308–09 (3d Cir. 1986))); *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993) (explaining that "it is unnecessary for government employees to make an

actual 'conscious decision' regarding policy factors" for the discretionary function exception to apply).

The "reasons" for the National Park Service's decisions are therefore irrelevant, and no discovery will be permitted on those issues.  The only issues subject to discovery at this time are whether a mandatory directive governed the National Park Service's actions with regard to the purportedly negligent conditions at Ford's Theatre and whether the agency or its employees violated that directive.  Following the completion of jurisdictional discovery, the United States may renew its motion to dismiss.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 12) is **DENIED WITHOUT PREJUDICE**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 9, 2016                                         RUDOLPH CONTRERAS
                                                                          United States District Judge