UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BECKY WESBERRY, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 15-0825 (RC) |
| | : | | |
| v. | : | Re Document No.: | 26, 29 |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION [29];
GRANTING DEFENDANT'S MOTION TO DISMISS [26]

**I. INTRODUCTION**

Plaintiffs Becky Wesberry and Jim Wesberry bring this personal injury action against the United States. The Wesberrys, a married couple from Texas, allege that Becky Wesberry fell and sustained serious injuries when leaving Ford's Theatre, the historic site of President Abraham Lincoln's assassination on April 14, 1865. The United States National Park Service, an agency of the United States Department of the Interior, is responsible for administering the Theatre. The Wesberrys assert a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, and also seek damages for Jim Wesberry's loss of consortium due to his wife's injuries. This matter now comes before the Court on the Government's motion to dismiss and Plaintiffs' motion for reconsideration of the Court's prior opinion. For the reasons stated below, the Court finds that the United States' decisions at issue in this case fall within the FTCA's discretionary function exception and that it therefore lacks subject-matter jurisdiction to hear Plaintiffs' claims.

## II. BACKGROUND

### A. Ford's Theatre and Ms. Wesberry's Injury

Ford's Theatre is administered by the National Park Service as a historic site within the National Mall and Memorial Parks Area. *See* Decl. of Karen Cucurullo ("Cucurullo Decl.") ¶ 3, ECF No. 12-1. In 1968, the National Park Service re-opened Ford's Theatre to the public after attempting to restore it to the state in which it operated on the night President Lincoln was assassinated. *Id.* ¶ 4. Today, Ford's Theatre includes a museum dedicated to the Theatre's history and legacy, as well as a working venue for theatrical performances. *Id.*

The Organic Act requires the National Park Service to manage the National Park System in a manner that conforms to the purpose of the parks, which is to "conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life . . . as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a).[1] Ms. Cucurullo declares that Ford's Theatre is managed in a manner consistent with those objectives. *See* Cucurullo Decl. ¶ 5. The National Park Service "vests decision-making authority," including "public safety-related decisions," in park superintendents. *Id.* ¶ 6. Specifically, National Park Service policies provide that the "means by which public safety concerns are to be met is left to the discretion of the superintendents and other decision makers at the park level." *Id.* (quoting National Park Service Management Policies § 8.2.5, ECF No. 12-2). Other National Park Service guidelines explain that park superintendents "must make discretionary decisions that balance public recreation and safety with preservation of the protected natural, historic, or cultural setting." *Director's Order*

---

[1] The Organic Act, originally codified at 16 U.S.C. § 1, was amended and recodified in 2014, although the core mandate remained the same. *See* National Park Service and Related Programs, Pub. L. No. 113-287, § 2, 128 Stat. 3094, 3094 (2014).

*50C*: *Public Risk Management Program*, Nat'l Park Serv. at § 1.1 (May 7, 2010), ECF No. 12-3; *see also* Cucurullo Decl. ¶ 6.

The Ford's Theatre façade includes five doors that exit from the lobby onto 10th Street, Northwest. *See* Am. Compl. ¶¶ 12–13, ECF No. 9; Cucurullo Decl. ¶ 7. Because the sidewalk outside is slightly below the exits and the sidewalk itself is on a slope, each exit includes between one and five steps down to the walkway. *See* Am. Compl. ¶¶ 13, 17; Cucurullo Decl. ¶ 7. According to Plaintiffs, three of the five exits were not originally doorways at all, but rather windows that were converted sometime in the 1960's. *See* Pls.' Mot. for Reconsideration at 10, ECF No. 29. When the Theatre was re-opened under National Park Service control in 1968, none of the five exits had handrails. *See* Cucurullo Decl. ¶ 9; *accord* Am. Compl. ¶ 16. However, sometime between 1968 and 1996, handrails were installed alongside stairs for three of the five exits—specifically, the three exits with the greatest number of steps. *See* Cucurullo Decl. ¶ 8; Def.'s Mot. Dismiss Ex. 2, ECF No. 12-4 (depicting stairs with handrails).

According to the Amended Complaint, on April 28, 2014, Plaintiffs Becky and Jim Wesberry were leaving Ford's Theatre when Ms. Wesberry fell down two, low-rise steps at the building's exit, causing her multiple facial lacerations, loss of consciousness, and a broken hip. *See* Am. Compl. ¶¶ 9, 19–23. Ms. Wesberry and her husband subsequently brought suit against the United States for negligence and loss of consortium, claiming that the Government was negligent in failing to install handrails and other safety features on the stairs from which she fell. *See* Am. Compl. ¶¶ 24–31. Sometime thereafter, handrails were installed alongside the stairs of the Theatre's remaining two exits. *See* Decl. Richard Ramos, ECF No. 29-2.

3

## B. The FTCA and the Discretionary-Function Exception

The Government responded to Plaintiffs' suit by moving to dismiss the matter under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction. Specifically, the Government claimed that the FTCA, 28 U.S.C. §§ 1346(b), 2671, did not authorize suit against the United States for the Government decisions at issue and, therefore, the suit was barred by sovereign immunity.

"If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia,* 931 F.Supp.2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")). Courts "may not find a waiver unless Congress' intent is 'unequivocally expressed' in the relevant statute." *Hubbard v. Adm'r, EPA,* 982 F.2d 531, 532 (D.C. Cir.1992) (quoting *United States v. Mitchell,* 445 U.S. 535, 538 (1980)).

The FTCA is a federal statute that provides a limited waiver of sovereign immunity, allowing the United States government to be held liable for negligent acts and omissions of federal employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976). However, the FTCA also contains a number of exceptions that limit its scope. The Government claims that the Government actions at issue in this suit fall within the so-called "discretionary function exception." Under that exception, the United States expressly retains immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception reflects Congress' "desire to prevent judicial second-guessing" of certain decisions. *Berkovitz by*

*Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted). Because the purpose of the exception is to shield discretionary policy decisions from liability, the exception applies even when an employee's alleged acts are negligent. *See United States v. Gaubert*, 499 U.S. 315, 323 (1991) (examining *Varig Airlines* and explaining that actions taken in furtherance of the relevant discretionary decision in that case were protected, "even if those particular actions were negligent"). "If the discretionary function exception applies, the district court lacks subject matter jurisdiction over the case." *Sloan v. U.S. Dep't of Hous. And Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)).

To determine whether the discretionary function exception applies to particular Government actions, the Supreme Court has propounded a two-step test. *See Gaubert*, 499 U.S. at 322–23. First, the exception "covers only acts that are discretionary in nature" and "involv[e] an element of judgment or choice." *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536). The exception does not apply where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id*. In the case of a specific prescription, "no discretion is employed and the only remaining inquiry . . . is whether the employee did, or did not, do what was prescribed by the applicable statute, regulation, or policy." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 82 (D.D.C. 2005) (quoting *Macharia v. United States*, 238 F. Supp. 2d 13, 22 (D.D.C. 2002)).

Second, even if "the challenged conduct involves an element of judgment," that judgment must be "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz,* 486 U.S. at 536). The exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social,

economic and political policy," so it only protects "governmental actions and decisions based on considerations of public policy." *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). When evaluating the governmental action or decision, a court's analysis should not turn on "what the decisionmaker was thinking, but [rather] the type of decision being challenged." *Loughlin v. United States*, 393 F.3d 155, 163 (D.C. Cir. 2004) (alteration in original) (quoting *Cope*, 45 F.3d at 449).

### C. The Court's Prior Ruling and the Present Motions

In ruling on the Government's prior motion to dismiss, the Court concluded that the discretionary function exception might very well present a bar to Plaintiffs' claims. *See* Mem. Op. at 2, ECF No. 19. Indeed, the Court found that, if the National Park Service's decisions with regard to warning signs, handrails, and other safety features at Ford's Theatre were discretionary, they would be of the kind that the discretionary function was designed to protect because those decisions are based on a weighing of various public policy considerations. *See id.* at 20. However, the Court found that it could not fully resolve the jurisdictional inquiry because it was still premature to determine whether the decisions at issue were, in fact, discretionary. *See id.* at 22. That is, whether there was any binding mandate that governed the agency's decision-making process. *Id.* Thus, the Court permitted the Plaintiffs to conduct limited, jurisdictional discovery on that question. *See id.* at 22–27.

The Plaintiffs have now taken jurisdictional discovery and both the Government and the Plaintiffs have filed new motions addressing the jurisdictional questions under the FTCA. First, the Government has renewed it motion to dismiss for lack of subject-matter jurisdiction, claiming that there is no evidence that it was bound by any statute, regulation, or policy. *See* Def.'s Mot. Dismiss or Summ. J. at 1–2, ECF No. 26. According to the Government, the

decisions concerning stairway safety features were indeed protected by the discretionary function exception and thus not subject to suit under the FTCA. *See id.* at 8–18. For this reason, it asks the Court to dismiss the suit for lack of subject-matter jurisdiction. *Id.* at 1. Plaintiffs have opposed the Government's motion and have filed their own motion for reconsideration of the Court's prior decision. Plaintiffs argue that "two newly available pieces of evidence" cast doubt on this Court's prior holding and, in fact, suggest that the decisions not to install handrails alongside the stairs at Ford's Theatre were not judgments so grounded in public policy as to be protected under the discretionary function exception. *See* Pls.' Mot. Reconsideration at 1, ECF No. 29.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush,* 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). It is the plaintiff's burden to establish that the court has subject-matter jurisdiction. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). When considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). A court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Herbert*, 974 F.2d at 197). For the purposes of deciding whether this Court has subject-matter jurisdiction, the Court will consider evidence outside the pleadings, including the declarations provided by the Government and documentary evidence provided by both parties.

## IV. ANALYSIS

The parties' present motions ask the Court to finally resolve whether the FTCA's discretionary function exception applies to the decisions at issue in this case. For the reasons stated below, the Court finds that the FTCA's discretionary function exemption applies and therefore dismisses this suit for want of subject-matter jurisdiction.

### A. Discretionary Nature of the Decisions at Issue

The Government asks this Court to pick up where its last Memorandum Opinion left off—the discretionary nature of the decisions at issue. As noted above, the discretionary function exemption does not apply if "the injury resulted from a government employee's failure to follow a specific, mandatory policy requiring a particular course of action." *Singh v. S. Asian Soc'y of the George Washington Univ.*, No. 06-0574, 2007 WL 1521050, at *4 (D.D.C. May 21, 2007); *see also Gaubert*, 499 U.S. at 322. If a plaintiff was injured because a federal employee failed to follow a governing statute, regulation, or established policy, the employee's actions cannot be discretionary because the "employee ha[d] no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. If, on the other hand, the employee's decision "involves judgment, planning, or policy decisions" it is rightly considered discretionary. *KiSKA Constr. Corp., U.S.A. v. WMATA*, 321 F.3d 1151, 1159 n.9 (D.C. Cir. 2003). In other words, an action is discretionary unless the statute, regulation, or policy leaves "'no room for choice.'" *Banneker Ventures, LLC*, 798 F.3d at 1143 (quoting *Gaubert*, 499 U.S. at 324). The Government argues that, despite having been afforded an opportunity to conduct jurisdictional discovery, Plaintiffs can identify no mandatory directive that controlled the National Park Service's decisions concerning safety features on the exterior steps of Ford's Theatre. *See* Def.'s Mot. Dismiss or Summ. J. at 14.

Plaintiffs contend, however, that the National Park Service was, in fact, constrained by Director's Order #58 ("DO-58"). *See* Pls.' Mem. P. & A. at 7–9, ECF No. 28. DO-58 is an order that was issued by the Director of the National Park Service and was intended to provide a "more detailed interpretation of the structural fire policy articulated in National Park Service Management Policies 2006 by setting forth operational policies and procedures necessary to establish and implement structural fire management programs." *See Director's Order #58: Structural Fire Management*, Nat'l Park Serv. at § I (Apr. 22, 2010) ("DO-58"). Plaintiffs point out that, under DO-58, the National Park Service announced that it would "adopt National Fire Protection Association ('NFPA') codes and standards and recommend practices for fire prevention, protection and life safety, with exceptions and modifications as adopted in [Reference Manual #58]." DO-58 at § IV.H; *see also* Pls.' Mem. P. & A. at 7–8. Although not explicitly stated in DO-58, Plaintiffs contend that this adoption of NFPA codes and standards necessarily implied an espousal of certain sections of NFPA's Life Safety Code that they claim required handrails to be installed on stairs and ramps. *See* Pls. Mem. P & A. at 7–8; *NFPA 101: Life Safety Code* §§ 7.2.2.4.1.1, 7.2.2.4.1.6 (2012 ed.), ECF No. 28-3. Accordingly, Plaintiffs argue that the discretionary function exception does not bar their claims because there was a specific, mandatory policy requiring the National Park Service to install handrails on the stairs on which Ms. Wesberry fell. Pls.' Mem. P. & A. at 9.

But Plaintiffs read too much into the language of DO-58. Nothing in DO-58 specifically adopts the NFPA provisions cited by Plaintiffs nor is there any language indicating that the National Park Service intended to strictly adhere to each and every NFPA code provision without alteration. Indeed, the document itself expressly states that the National Park Service *will* make "exceptions and modifications" to NFPA standards. DO-58 at § IV.H. Thus, it unsurprisingly

9

recognizes that "not all structures will be in full compliance" and notes that deviations from code compliance may be "acceptable." DO-58 § IV.I. Furthermore, even the NFPA codes and standards are not as inflexible as Plaintiffs would have this Court believe. Indeed, while Plaintiffs focus on two NFPA provisions that concern handrails, they entirely ignore NFPA provisions that discuss historic structures. Those codes and standards explicitly state that, in the context of historic buildings, strict compliance with its provisions is not necessarily required in every instance. *NFPA 101: Life Safety Code* § 4.6.4.2 ("The provisions of this *Code* shall be permitted to be modified by the authority having jurisdiction for buildings or structures identified and classified as historic buildings or structures where it is evidence that a reasonable degree of safety is provided."); *NFPA 914: Code for Fire Protection of Historic Structures* § 1.4.2 (2010 ed.) ("Historic Structures or portions of such structures that do not strictly comply with this code shall be considered to be in compliance if it can be shown that equivalent protection has been provided or that no specific hazard will be created or continued through noncompliance."); *Id.* at A.8.1.4 ("In historic buildings it is intended that any condition that represents a serious threat to life be mitigated by application of appropriate safeguards. It is not intended to require modifications for conditions that do not represent a significant threat to life, even though such conditions are not literally in compliance with the prevailing code."). Indeed, the NFPA codes themselves appear to recognize that, in the context of historic buildings, decisions about code compliance will necessarily require balancing considerations of safety with concerns over preservation of heritage. *NFPA 914: Fire Protection of Historic Structures* § 4.2 (stating that, in the context of historic structures, the goal is to both "[p]rovide protection and life safety from the effects of fire" *and* to "[m]aintain the historic fabric and integrity of the building"). That is to say, they involve matters of judgment and discretion. And most importantly, Plaintiffs fail to

demonstrate how DO-58 predominates over the higher-level policy of historic preservation being balanced with public safety found in the Organic Act, the National Park Service Management policies, and different Director's Orders. *See e.g.,* 54 U.S.C. § 100101(a); National Park Service Management Policies § 8.2.5; *Director's Order #28: Cultural Resource Management*, Nat'l Park Serv. (Jun. 11, 1998); *Director's Order 50C*: *Public Risk Management Program*, Nat'l Park Serv. at § 1.1 (May 7, 2010). Accordingly, the Court finds that Plaintiffs have failed to show that the National Park Service was bound by any particular statute, regulation, or policy that left it "'no room for choice.'" *Banneker Ventures, LLC*, 798 F.3d at 1143 (quoting *Gaubert*, 499 U.S. at 324).

### B. The Kind of Judgment Protected by the Discretionary Function Exception

Having found that the judgments at issue were, in fact, discretionary, the Court must consider whether they were "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz,* 486 U.S. at 536). This, however, is an issue that this Court has already decided. Indeed, this Court previously held that the "decisions in question relate to balancing aesthetic and preservation concerns with public safety" and thus "implicate policy considerations and constitute the type of discretionary decision-making that the discretionary function exception is intended to protect." Mem. Op. at 17, 20. Nevertheless, Plaintiffs have now moved for reconsideration of that holding pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 54(b) governs situations in which a party seeks reconsideration of an interlocutory order. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties

and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Relief pursuant to Rule 54(b) is to be provided "as justice requires," and may be warranted when a court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred." *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (internal citation, quotation, and alteration omitted); *see also Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). "[I]n general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Murphy v. Exec. Office for United States Attorneys*, 11 F. Supp. 3d 7, 8 (D.D.C. 2014), *aff'd sub nom. Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204 (D.C. Cir. 2015) (internal quotation and alteration omitted). "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances." *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting *Cobell*, 224 F.R.D. at 272).

At the same time, a court's discretion under Rule 54(b) is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotations and citations omitted). Under Rule 54, "[t]he burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were

denied." *Second Chance Body Armor*, 893 F. Supp. 2d at 268 (citing *Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)). And it is well-established that motions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier. *See Bailey v. U.S. Marshal Serv.*, No. 08-cv-0283, 2009 WL 973197, at *2 (D.D.C. Apr. 2, 2009).

Plaintiffs contend that reconsideration is warranted in this case based on two purportedly new pieces of evidence. First, Plaintiffs assert that it was revealed during jurisdictional discovery that Ford's Theatre was renovated between 2007 and 2009. *See* Pls.' Mot Reconsideration at 4. These renovations included the addition of: "elevators; modern heating; ventilation, and air-conditioning systems; up-to-date sound, lighting, and stage-rigging systems; wheelchair-accessible restrooms; and more comfortable seating." Pls.' Mot. Reconsideration at 12. Moreover, Plaintiffs allege that, during that same period, a "new, contemporarily designed glass-and-steel lobby was added" along with a "new 'parlor' for special events." Pls.' Mot. Reconsideration at 9, 12. Second, Plaintiffs claim that they learned, after filing their Complaint, that handrails were installed alongside the stairs where Ms. Wesberry fell. *See* Pls.' Mot. Reconsideration at 13. Plaintiffs argue that "[t]he newly available evidence about the modernization of Ford's Theatre and the installation of handrails alongside the stairs where [Ms.] Wesberry fell . . . show that the failure to put those handrails in place before the accident does not involve policy decisions of the sort that the FTCA's discretionary-function exception protects from litigation." Pls.' Mot. Reconsideration at 18.

Despite Plaintiffs' characterizations, it is far from clear that either of these "newly available pieces of evidence" were "not previously available" to them. *See Murphy*, 11 F. Supp.

3d 7, 8 (D.D.C. 2014). Indeed, Plaintiffs' motion elicits no reason why they could not have made their arguments concerning Theatre improvements in their prior briefs. To start, the renovations cited by Plaintiffs were apparently completed in 2009—five years before the Plaintiffs visited the Theatre—and Plaintiffs make no claim that these updates were somehow secreted from view or otherwise unapparent.[2] Moreover, most of Plaintiffs' characterizations about the project were drawn—not from any documents produced by the Government in discovery—but from a 2014 book, entitled *Images of America: Ford's Theatre*. *See* Pls.' Mot. for Reconsideration at 7–11. This hardly counts as evidence that was previously unavailable to Plaintiffs. With respect to the new railings, Plaintiffs claim only that they "learned" about the addition sometime "after the filing of their complaint." Pls.' Mot. for Reconsideration at 4. They do not claim that the railings were installed after the prior briefing or even that they were unaware of the railings at the time of the Government's prior motion. Thus, Plaintiffs fail to provide this Court with any basis upon which to find that the evidence that they now cite was previously unavailable to them. Moreover, Plaintiffs' motion simply seems to be an extension of the same legal arguments that this Court rejected over a year ago. Thus, it appears that Plaintiffs primarily seek an "opportunity to reargue facts and theories upon which [this] [C]ourt has already ruled" and "present[] theories or arguments that could have been advanced earlier." *See Bailey*, 2009 WL 973197, at *1 n.2. On this basis alone, Plaintiffs' motion could properly be denied.

---

[2] Indeed, the Court believes that it is very likely that, when the Wesberrys visited in 2014, they themselves might have recognized that the more-than-150-year-old structure had been modernized with the supposed significant additions that they cite, such as a "contemporarily designed glass-and-steel lobby" or other modern conveniences like elevators or climate control.

Nevertheless, even considering Plaintiffs' arguments anew, their motion fails. At the outset, the Court must note that Plaintiffs' factual predicate appears to be somewhat inaccurate. While it is true that the National Park Service renovated Ford's Theatre between 2007 and 2009, the Government has provided evidence showing that the renovations to the Theatre were not as extensive as Plaintiffs claim. Indeed, the National Park Service's principle project manager for the 2007–2009 renovations attests, contrary to Plaintiffs' assertions, that the improvements at Ford's Theatre did not include a parlor or a modernized, glass-and-steel lobby. *See* Decl. Mike Giller ¶ 9, ECF No. 34-1. Rather, those renovations were undertaken by a private organization at an adjacent building that is neither part of the Ford's Theatre National Historic Site nor managed by the National Park Service in any way. *See* Decl. Mike Giller ¶¶ 7–8. The 2007–2009 renovations at Ford's Theatre were decidedly more modest. They included upgrades to the building's ventilation and climate systems, restroom renovations, and certain theater improvements, all of which were intended to enhance visitor experience without degrading the historical character of the Theatre. *See* Decl. Mike Giller ¶ 3; Def.'s Opp'n Pls.' Mot. Reconsideration at 5, ECF No. 34. Despite having the opportunity to do so, Plaintiffs have not replied to these assertions.

Plaintiffs argue that consideration of the historical improvements to Ford's Theatre should alter this Court's prior determination for two reasons. First, Plaintiffs claim that the developments at Ford's Theatre "call into serious question the importance of . . . the goal of preserving Ford's Theatre and leaving it unimpaired for future generations." Pls.' Mot. Reconsideration at 12 (internal quotation marks and citations omitted). That is to say, Plaintiffs challenge whether the National Park Service has a preservation interest in Ford's Theatre at all because the Government has undertaken certain improvements of the structure over the years.

15

This contention is patently wrong. To start, the significant value of Ford's Theatre to the heritage of the United States should be obvious to anyone with even a basic understanding of American history and is clearly evinced by the fact that the structure is listed on the National Registry of Historic Places. Under the Organic Act, the National Park Service is required "to conserve the scenery, natural and historic objects . . . and to provide for the enjoyment of the scenery, natural and historic objects . . . as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a). Other National Park Service guidelines state that park superintendents must "balance public recreation and safety with preservation of the protected natural, historic, or cultural setting." *See Director's Order 50C*: *Public Risk Management Program*, Nat'l Park Serv. at § 1.1 (May 7, 2010). And the National Park Service officials have declared that the National Park Service manages Ford's Theatre in a manner consistent with those objectives. *See* Cucurullo Decl. ¶ 5.

As this Court previously explained, the discretionary function exception "is not limited to historical, cultural, or natural sites maintained in their pristine state." Mem. Op. at 17. Thus, an historic building need not necessarily eschew electricity, running water, or certain other modern conveniences to remain worthy of preservation. In the case of Ford's Theatre, the renovations and improvements cited by Plaintiffs have not so fundamentally altered the structure that its historic fabric has been torn asunder. Rather, the National Park Service has sought to improve and enhance the visitor experience without degrading the Theatre's historic character. Thus, the National Park Service continues to balance the legitimate public interests of safety and historic preservation, which are precisely the kind of public policy based "decisions which Congress intended to shield from judicial second-guessing." *See* Mem. Op. at 18 (quoting *Chantal v. United States*, 104 F.3d 207, 212 (8th Cir. 1997)).

But Plaintiffs also make another argument. Plaintiffs suggest that, even if the National Park Service has a preservation interest in Ford's Theatre, there is no such interest at play with regard to the addition of handrails at the 10th Street façade because, not only did some of the exits already have handrails at the time of Ms. Wesberry's fall, but the National Park Service later decided to add handrails at the exit that Ms. Wesberry used. *See* Pls.' Mot. Reconsideration at 13. This argument, too, is misguided. The question that the Court must resolve is whether the decisions at issue "implicate social, economic, or political policies." *See Gaubert*, 499 U.S. at 332. In this case, the specific question is whether the decisions at issue involved weighing an interest in historic preservation of Ford's Theatre. The ultimate *outcome* of that weighing at any point in time, however, is irrelevant. All that is required is "some support in the record that the decisions taken are 'susceptible' to policy analysis." *Terbush v. United States*, 516 F.3d 1125, 1134 (9th Cir. 2008). Based on the record, the Court is convinced that the National Park Service has a legitimate preservation interest in Ford's Theater, including the 10th Street façade. Indeed, the National Park Service officials have declared that the façade remains within the historical fabric of the Theatre and that "any construction or alteration thereto must be considered within the interests of preservation as required by law and [National Park Service] policy." Decl. Mike Giller at ¶ 4. The mere fact that the National Park Service may or may not ultimately decide to install handrails in no way diminishes the fact that the decision itself is the type that requires a judgment about public policy. Similarly, the applicability of the discretionary function exception does not turn on what the decision maker was actually thinking or what the government actually considered. *See Loughlin*, 393 F.3d at 163. The fact that, after Ms. Wesberry's injury and with additional information in hand to balance the interests of historic preservation and public safety, the National Park Service drew the line in a different spot by installing additional handrails in no

17

way suggests that the discretionary function exception does not protect the very process of the line-drawing.

Finally, Plaintiffs argue that this is a case like the one addressed by the Supreme Court in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). *See* Pls.' Mot. Reconsideration at 15. In that case, a ship allegedly ran aground because the U.S. Coast Guard failed to maintain a lighthouse in good working order. *See Indian Towing Co.*, 350 U.S. at 62. The Supreme Court held that, even though the initial decision to undertake the construction and operation of a lighthouse might have involved a discretionary decision, the discretionary function exception did not apply because the failure to maintain the lighthouse in good working condition did not involve any permissible exercise of policy judgment. *See id.* at 69; *Berkovitz*, 486 U.S. at 538 n.3. Analogizing to *Indian Towing*, Plaintiffs argue that, although the National Park Service's decision to convert a window into the door where Ms. Wesberry fell and to install stairs between that door and the sidewalk might have been a permissible exercise of discretionary judgment, having made these determinations, it was incumbent upon the Government to install handrails in order to make those stairs safe. Pls.' Mot. Reconsideration at 14–16.

As *Indian Towing* illustrates, and as later cases have emphasized, "garden-variety" maintenance is not the kind of discretionary judgment that is protected by the discretionary function exception. *Cope*, 45 F.3d at 448. But here, the steps at Ford's Theatre were not alleged to have been in disrepair and Ms. Wesberry's injuries were not alleged to have been caused by any alleged failure to *maintain* those steps. Rather, Plaintiffs argue that the National Park Service should have added other, additional and different safety features. That is the difference between arguing that the lighthouse in *Indian Towing* was not being properly maintained versus arguing that the lighthouse should have been taller, brighter, or placed in another location. In

short, *Indian Towing* presents no impediment to the Court finding that the Government exercised discretion that was "'fraught with' economic, political, or social judgments." *Cope*, 45 F.3d at 450.

The decision whether to install handrails along the façade of Ford's Theatre very clearly impacts the outward appearance of the Theatre and therefore requires the National Park Service to carefully weigh concerns of safety with considerations for the historic preservation of the structure. This is precisely the sort of judgment "that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz,* 486 U.S. at 536). Accordingly, for all the reasons stated above, the Court denies Plaintiffs' motion for reconsideration

## V.  CONCLUSION

For the foregoing reasons, the Court finds that the decisions at issue in this case implicate the FTCA's discretionary function exception and that the United States has not consented to suits of this nature. Accordingly, the Court must dismiss this suit for want of subject-matter jurisdiction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 28, 2018  　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge